UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

KATHERINE J. POLICORO,                )
                                       )
                    Plaintiff,         )        Case No. 1:09-cv-71
                                       )
v.                                     )        Honorable Robert Holmes Bell
                                       )
COMMISSIONER OF                        )
SOCIAL SECURITY,                       )
                                       )        **REPORT AND RECOMMENDATION**
                    Defendant.         )
_____)

        This is a social security action brought under 42 U.S.C. § 405(g) seeking review of

a final decision of the Commissioner of Social Security denying plaintiff's claim for disability

insurance benefits (DIB).  On August 8, 2003, plaintiff filed her application for DIB  benefits

alleging an August 1, 2000 onset of disability.  The denial of an earlier claim for DIB benefits barred

any onset of disability date before November 1, 2001. (A.R. 26).  Plaintiff's disability insured status

expired on March 31, 2004.  Thus, it was plaintiff's burden to submit evidence demonstrating that

she was disabled on or before March 31, 2004.  *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir.

1990).

        Plaintiff's claim for DIB benefits was denied on initial review.  (A.R. 44-49).  On

October 7, 2005, she  received a hearing before an administrative law judge (ALJ), at which she was

represented by counsel.  (A.R. 838-72).  On January 12, 2006, the ALJ rendered a decision finding

that plaintiff was not disabled.  (A.R. 590-601).  Plaintiff sought review by the Appeals Council.

On December 15, 2006, the Appeals Council entered its order vacating the ALJ's decision and

remanding the matter for further administrative proceedings. (A.R. 584-86). On January 29, 2008, plaintiff received another administrative hearing (A.R. 873-908), at which she was represented by counsel. On June 26, 2008, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 26-37). On December 2, 2008, the Appeals Council denied review (A.R. 6-8), and the ALJ's decision became the Commissioner's final decision.

On January 28, 2009, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits. The three issues raised by plaintiff are as follows:

1. The ALJ "improperly evaluated the medical opinion evidence" in making his finding regarding plaintiff's residual functional capacity;

2. The ALJ committed reversible error when he found that plaintiff's testimony was not fully credible; and

3. The ALJ committed reversible error when he failed to ask the vocational expert whether the jobs he had identified were consistent with the *Dictionary of Occupational Titles*.

(Plf. Brief at 16, 19, 23, docket # 10). I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is

defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

# Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from November 1, 2001, through March 31, 2004, but not thereafter. Plaintiff had not engaged in substantial gainful activity on or after November 1, 2001. (A.R. 28-29). Plaintiff had the following severe impairments: psoriatic arthritis, rheumatoid arthritis in remission, fibromyalgia, major depression, and generalized anxiety disorder with panic attacks. (A.R. 29). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 29). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) that involves lifting up to 10 pounds, standing and/or walking up to 2 hours in an 8-hour workday, sitting up to 6 hours in an 8-hour workday; frequent use of upper and lower extremities; occasional climbing of ramps, stairs, ladders, ropes or scaffolds; occasional stooping, kneeling, crouching, or crawling; frequent handling and fingering and constant reaching and feeling; and limited to work that is simple, repetitive and unskilled.

(A.R. 32). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible:

> The medical and other evidence establishes impairments capable of producing pain, but does not support the claimant's description of her limitations because of the pain. The record indicates that she received an award from her church for involvement and work within all areas of the church in 2003 (Exhibit 6E)[A.R. 112-18]; she advised in February 2004, she had begun re-engaging in hobbies and interests such as studying, reading, doing "artsy" things like [s]tained [g]lass, [b]anners, [s]crapbooking, journaling as well as enjoying watching her granddaughter and cooking with her husband (Exhibit 19F, page 16)[A.R. 541]; these are activities where the upper extremities are used and fine and gross manipulation is essential. There is no record she ever returned to another rheumatologist after 2002 to address the problems she alleges with her psoriatic arthritis and fibromyalgia during the period at issue. When she saw a rheumatologist in 2007, there is no evidence that she ever took the medication prescribed. Therefore, the claimant's statements concerning the

intensity, persistence and limiting effects of her symptoms are credible only to the extent that they are consistent with the residual functional capacity assessment for the reasons explained above (SSR 96-7p).

(A.R. 34). Plaintiff was unable to perform her past relevant work as a township planner. (A.R. 35). She was 45-years-old on the date of her alleged onset of disability and 47-years-old on the date her disability insured status expired. Thus, at all times relevant to her claim for DIB benefits, plaintiff was classified as a younger individual. (A.R. 35). Plaintiff has at least a high school education and is able to communicate in English. (A.R. 35). The transferability of jobs skills was not material to a disability determination. (A.R. 36). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were more than 14,000 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 900-01). The ALJ found that this constituted a significant number of jobs.[1] Using Rule 201.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 26-37).

## 1.

Plaintiff argues that the ALJ committed reversible error in finding that her testimony regarding her subjective limitations was not fully credible. (Plf. Brief at 19-22). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See, e.g.*, *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health*

---

[1]The ALJ's opinion listed only 10,000 of the 14,000 jobs identified by the VE. (A.R. 36). The 4,000 job difference is attributable to the ALJ's understatement of the cashier jobs listed by the VE. This error worked to plaintiff's advantage. It does not provide a basis for disturbing the Commissioner's decision.

*& Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009).

A.    Fibromyalgia, Psoriatic Arthritis and Rheumatoid Arthritis in Remission

Plaintiff argues that the ALJ's credibility determination is "untenable" because the daily activities listed in the ALJ's opinion were not sufficient to provide substantial evidence supporting his factual finding. (Plf. Brief at 20). It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. (A.R. 33-35). *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Plaintiff's activities before her date last disability insured were of great significance. She was diagnosed with fibromyalgia, for which there is no laboratory test to establish the presence or severity of the disease.[2] "[T]he process for diagnosing fibromyalgia involves testing for tenderness in focal points and ruling out other conditions." *Rogers v. Commissioner*, 486 F.3d 234, 244 (6th Cir. 2007). The symptoms of fibromyalgia are largely subjective:

---

[2]Plaintiff states, "The ALJ references nearly normal x-rays, but for fibromyalgia, other than trigger points, 'objective' tests are of little relevance in determining its existence or severity." (Plf. Brief at 22). The ALJ's observations were directed towards plaintiff's arthritis, as objective tests do exist for measuring its presence and severity:

> During the period at issue, the claimant's rheumatologist indicates that the claimant has psoriatic arthritis, which was previously diagnosed as fibromyalgia and rheumatoid arthritis (Exhibit 14F)[A.R. 293-95]. Dr. Gilhooley notes continued symptoms of fibromyalgia such as fatigue and 16 of 18 tender points [o]n February 13, 2002 and 12 of 18 tender points in June 2002 (Exhibit 14F)[A.R. 292, 294]. Dr. Mawby's records indicate that the rheumatoid arthritis was in remission with decreasing sed[imentation] rates in June 2001 and with joint examinations not reflecting any synovitis or swelling in addition to negative ANA and rheumatoid factor testing (Exhibit 15F, page 9)[A.R. 302]. Further, as noted above, x-rays of the claimant's hands, wrists, shoulders, knees, feet, cervical spine, [and] pelvis of August 2001 and February 2002 are essentially within normal limits (Exhibit 1[4]F, pages 61-64, 66-67)[A.R. 343-46, 348-49].

(A.R. 33).

[F]ibromyalgia, also known as fibrositis[,] is a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and -- the only symptom that discriminates between it and other diseases of a rheumatic character-- multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

*Huffaker v. Metropolitan Life Ins. Co.*, 271 F. App'x 493, 500 n.2 (6th Cir. 2008) (quoting *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003)). "[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits . . . ." *Vance v. Commissioner*, 260 F. App'x 801, 806 (6th Cir. 2008); *see Infantado v. Astrue*, 263 F. App'x 469 (6th Cir. 2008); *Arnett v. Commissioner*, 76 F. App'x 713 (6th Cir. 2003). "'Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [the claimant] is one of the minority.'" *Vance v. Commissioner*, 260 F. App'x at 806 (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). Disability is determined not by the presence of impairments, but rather the functional restrictions placed on the individual by those impairments. *Huffaker*, 271 F. App'x at 500. "While the diagnos[is] of ... fibromyalgia may not lend [itself] to objective clinical findings, the physical limitations imposed by the symptoms of such illness[ ] do lend themselves to objective analysis." *Boardman v. Prudential Ins. Co.*, 337 F.3d 9, 16-17 n. 5 (1st Cir. 2003). The ALJ provided a detailed and lengthy discussion of his reasons for finding that plaintiff's subjective complaints were not fully credible. I find that the ALJ's credibility determination is supported by more than substantial evidence.

Plaintiff argues that the ALJ improperly "fault[ed] Ms. Policoro for not seeing a rheumatologist from 2002 to 2007 and for not taking the medication prescribed by rheumatologist

Dr. Kazmers in 2007." (Plf. Brief at 21). There was nothing improper in the ALJ's noting that plaintiff's physical impairments were such that they required no treatment by a specialist for a five-year period. Further, the ALJ's main point was that the opinions Dr. Kazmers supplied in 2007 did not lend significant support to plaintiff's claims that she was disabled during the period at issue: November 1, 2001, through March 31, 2004. Plaintiff's two treating rheumatologists during this period were Michael Mawby, M.D.,[3] and Karen L. Gilhooley, M.D. Dr. Mawby was plaintiff's treating rheumatologist from October 7, 1994, through July 24, 2001. (A.R. 272-74, 213). Dr. Gilhooley[4] was her treating rheumatologist from February 13, 2002, through August 1, 2002. (A.R. 83, 292-95). Plaintiff was not examined or treated by any rheumatologist between August 1, 2002, and January 31, 2007.[5]

---

[3]Dr. Mawby offered an initial diagnosis of fibromyalgia and possible inflammatory arthritis (A.R. 272-74). He later concluded that plaintiff had fibromyalgia and rheumatoid arthritis. (A.R. 268). On September 13, 1999, Dr. Mawby noted that plaintiff was "feeling fine" and had "no significant complaints." (A.R. 241). Plaintiff did not have any joint synovitis. Dr. Mawby found that plaintiff's rheumatoid arthritis was in remission. Plaintiff had tenderness in the usual fibromyalgia tender point locations, but was "doing well [on] amitriptyline." (*Id.*). On March 6, 2000, Dr. Mawby indicated that plaintiff's rheumatoid arthritis remained in remission and that her fibromyalgia had improved under the current treatment regimen. (A.R. 240). On September 5, 2000, Dr. Mawby noted that plaintiff was "doing well" with her fibromyalgia. Further, Dr. Mawby stated, "Kathy's arthritis is doing fine. She has no specific joint complaints and no significant morning stiffness." (A.R. 235). Plaintiff reported experiencing a flare in her pain in November 2000. (A.R. 224). On June 28, 2001, Dr. Mawby noted that he had not seen plaintiff in more than six months because she did not keep or had canceled her appointments. (A.R. 221). On July 24, 2001, Dr. Mawby noted that plaintiff's rheumatoid arthritis remained in remission. He encouraged plaintiff to continue aquatherapy exercise because it had "definitely helped" reduce her fibromyalgia symptoms. (A.R. 213).

[4]Dr. Gilhooley died at some time before plaintiff's October 7, 2005 hearing. (A.R. 846).

[5]Karin Olson, M.D., was plaintiff's treating psychiatrist from March 2, 1999, through September 26, 2001. (A.R. 228-31, 248-49, 275-84, 289-91).

The ALJ found that some of the opinions offered by Irene Kazmers, M.D., based on a single 2007 examination, appeared to be mere repetitions of plaintiff's subjective complaints rather than objective clinical observations. They could not be treated as the opinions of a treating physician,[6] particularly when plaintiff never took the one medication Dr. Kazmers had recommended:

> At the request of the claimant's attorney, the claimant saw Dr. Kazmers, a rheumatologist on January 31, 2007, who completed a form entitled *Rheumatoid Arthritis Impairment Questionnaire* [on] June 28, 2007 indicating that the claimant is able to sit six hours in an 8-hour workday, but did not indicate limitations on lifting and/or carrying restrictions because she had "not had adequate opportunity to address" these activities. Yet, she opined that the claimant must have 30-minute breaks 2-3 times per week, breaks to rest to relieve pain at unpredictable intervals during an 8-hour workday and would be absent from work more than 3 times a month (Exhibit 29F)[A.R. 709-15]. Although the undersigned accepts the finding that the claimant is able to perform sedentary work, great weight cannot be given to the conclusion because it appears to be based on the claimant's own reports of complaints and not based on a proper examination including objective clinical observations. It is therefore difficult to accept a finding that the claimant would be absent more than 3 times a month without a basis for the conclusion. In addition, the claimant testified Dr. Kazmers prescribed Methotextrate, which the claimant was to start after she got over her "infections." However, there is no indication that she actually began this treatment nor that she ever returned to this physician despite her complaints in this area.

(A.R. 34).

Plaintiff did make occasional visits to her treating family physician, Dr. Siemer, during the period between her last treatment by Dr. Gilhooley in August 2002 and the expiration of her disability insured status on March 31, 2004. (*See e.g.*, A.R. 318, 472-75, 478-97). Plaintiff's family physician did not refer plaintiff to another rheumatologist.

---

[6]Dr. Kazmers was not a treating physician and her opinions were not entitled to deference under the treating physician rule. *See Kornecky v. Commissioner*, 167 F. App'x 496, 506-07 (6th Cir. 2006).

B.  Mental Impairments

Plaintiff testified that her anxiety would interfere with her ability to work.  (A.R. 888-89, 891-92).  The ALJ found that the plaintiff's statements regarding the intensity and persistence of her functional limitations stemming from mental impairments were not fully credible.  The ALJ's finding was based, in part, on plaintiff's failure to seek regular and more intensive mental health care:

> The claimant reported that she has had depression since adolescence, but did not begin treatment until 1998 with Dr. Olson (Exhibit 13F)[A.R. 289].  She continued counseling and medication therapy from Dr. Olson through August 1, 2001 when Dr. Olson changed the diagnosis of adjustment disorder with depression and anxiety to chronic pain and generalized anxiety disorder.  Subsequently, the claimant did not seek treatment for depression or anxiety other than [through] her family physician, Dr. S[ie]mer, until March 2004, when she had a partial hospitalization for increasing depressive symptoms including suicidal ideation (Exhibit 19F, page 10)[A.R. 535].  After this partial hospitalization, Dr. S[ie]mer continued to prescribe medication for her mental condition and there is no indication that she ever sought mental health counseling or therapy from a mental health professional.  During this hospitalization she reported recently having "begun re-engaging with her hobbies and interests."  She was enjoying studying theology, general reading[,] doing "artsy" things like [s]tained [g]lass, [b]anners, [s]crap [b]ooking, and [] keeping a journal.  She indicated that she enjoys "watching" her granddaughter and cooking with her husband (Exhibit 19F, page 9)[A.R. 541].

(A.R. 33-34).  The ALJ applied the well-established general rule that a claimant's failure to seek treatment over an extended period of time is a factor to be considered against the claimant's assertion of a disabling condition.  *See Strong v. Social Security Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment" and "[a] failure to do so may cast doubt on the claimant's assertions of disabling pain.");[7] *see also Policy Interpretation*

---

[7]The rule is not without exception.  "In some circumstances, of course, a failure to seek examination or treatment may say little about a claimant's truthfulness."  *Strong*, 88 F. App'x at 846 (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 2004)).  In this case, there is no

-11-

*Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing Credibility of an Individual's Statements*, SSR 96-7p (reprinted at 1996 WL 374186, at * 7 (SSA July 2, 1996)) ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . ."). SSR 96-7p states that before drawing an adverse inference from the claimant's failure to seek or pursue regular medical treatment, an ALJ must first "consider[] any explanations the individual may provide or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." 1996 WL 374186, at * 7. Plaintiff did not offer an explanation why she failed to seek or obtain mental health treatment. She did not testify that she was unable to afford treatment, that it was otherwise unavailable,[8] or that she sought medical treatment and it was denied. I find no error.

### C. Work History

Plaintiff argues that her work history was a factor supporting her credibility:

[I]t is noted that the ALJ also commits legal error in failing to assess Ms. Policoro's symptoms in accordance with 20 C.F.R. § 404.1529 and the factors therein. For example, one of the factors to be considered is plaintiff's work history. In this case, the record reveals that Ms. Policoro[] had a solid work history and strong work ethic in that she continued to seek work which would accommodate her impairments after the onset of disability. Case law holds that these factors should have been considered by the ALJ as enhancing plaintiff's

_____

evidence that plaintiff's mental impairments were so severe that they prevented her from seeking examination or treatment.

[8]The Sixth Circuit has held that general assertions regarding a plaintiff's inability to pay for additional tests or services that might have supported her claim are insufficient. *Gooch*, 833 F.2d at 592. The Sixth Circuit recognizes that an inability to pay for medical services may result in less than optimum documentation of a plaintiff's condition, but the reviewing court must work with the medical record presented to it. "It is doubtless true that a more affluent patient might have obtained a more detailed medical record, but it does not necessarily follow that such a record would have compelled a conclusion that the claimant was disabled. We must work with the record we have . . . ." *Id.*

credibility regarding the limitations imposed by her impairments. [*S*]*ee Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994). By failing to follow the requirements of 20 C.F.R. § 404.1529(c)(3) and SSR 97-7p, and specifically address the factors set forth therein for credibility determinations, the ALJ commit[ted] reversible error. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 444, 545 (6th Cir. 2004); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007).

(Plf. Brief at 22). It is the ALJ's function to determine credibility issues, not the court's. *See Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009). The ALJ assessed plaintiff's symptoms in accordance with 20 U.S.C. § 404.1529(c) and SSR 97-7p. (A.R. 32). A claimant's work history is only one of the many factors that the ALJ can consider in making his credibility determination. *See* 20 C.F.R. § 404.1529; *see also White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009). Here, the ALJ considered plaintiff's work history as a township planner. (A.R. 35). Her work history was not of such magnitude that it undermined the other substantial evidence supporting the ALJ's credibility determination. The administrative record shows that plaintiff had a somewhat sporadic work history. She had no earnings and no quarters of coverage for 1987, 1988, and 1999, only one quarter of coverage in 1998, and only had sufficient quarters of coverage to remain disability insured until March 31, 2004. (A.R. 78). She quit her job in 1998. (A.R. 253). She did not work outside the home[9] in 1999. (A.R. 76). Her last employment was a few months of seasonal employment in 2000 as an office worker at Northport Point, a closed community near Northport, Michigan. (A.R. 897; *see* A.R. 75, 81). I find that plaintiff's "work history" argument does not provide a basis for disturbing the Commissioner's decision.

---

[9] Plaintiff testified that she provided care for Mr. Policoro who was then receiving treatment for a pituitary tumor. (A.R. 844-45).

**2.**

Plaintiff argues that the ALJ "improperly evaluated the medical opinion evidence" in making his finding regarding her RFC. Specifically, plaintiff argues that the ALJ should have given controlling weight to the opinion of her "long-time family doctor," Dr. Siemer, that she did not retain the RFC to perform "even the least exertionally demanding work." (Plf. Brief at 17; *see* Reply Brief at 1, 4, docket # 12). Dr. Siemer was a general practitioner rather than a specialist. He submitted numerous documents in support of plaintiff's claim for DIB benefits. (A.R. 476-77, 500, 552-57, 567-74, 666-75, 683, 688-94, 729, 796-802).

On August 7, 2007, the ALJ wrote a letter to plaintiff's attorney requesting a residual functional capacity assessment from plaintiff's treating rheumatologist. (A.R. 619). The request was repeated in a September 12, 2007 telephone call. (A.R. 620-22). The ALJ noted at the outset of plaintiff's January 29, 2008 hearing that he was concerned that plaintiff's attorney had not provided the evidence from Dr. Mawby, plaintiff's treating rheumatologist. (A.R. 877). When the ALJ asked why this information had not been provided, plaintiff's attorney responded that he was not sure whether anyone had tried to contact Dr. Mawby. (A.R. 906). The ALJ was not satisfied with the statement in plaintiff's prehearing brief to the effect that Dr. Siemer's statements should be considered adequate.[10] (*Id.*). Plaintiff's attorney promised to provide the ALJ with a follow-up letter describing his firm's efforts to contact Dr. Mawby. (*Id.*). There is no such letter in the administrative record.

---

[10]The October 22, 2007 prehearing brief states as follows: "We are in receipt of your letter dated August 4, 2007 requesting a report from Ms. Policoro's rheumatologist. While Ms. Policoro does not have a treating rheumatologist, her treating physician since 1997 Philip Siemer, M.D., has completed multiple reports on her behalf as outlined in the following summary of relevant medical evidence and theory of disability on behalf of the claimant." (A.R. 653).

-14-

The ALJ's opinion states, in pertinent part, as follows:

During the period at issue [November 1, 2001, through March 31, 2004], the claimant's rheumatologist indicates that the claimant has psoriatic arthritis, which was previously diagnosed as fibromyalgia and rheumatoid arthritis (Exhibit 14E)[A.R. 292-97]. Dr. Gilhooley notes continued symptoms of fibromyalgia such as fatigue and 16 of 18 tender points in February 13, 2002 and 12 of 18 tender points in June 2002 (Exhibit 14F)[A.R. 292-95]. Dr. Mawby's records indicate that the rheumatoid arthritis was in remission with decreasing sed[imentation] rates in June 2001 and with joint examinations not reflecting any synovitis or swelling in addition to negative ANA and rheumatoid factor testing (Exhibit 15F, page 9)[A.R. 221]. Further, as noted above, x-rays of the claimant's hands, wrists, shoulders, knees, feet, cervical spine, pelvis of August 2001 and February 2002 are essentially within normal limits (Exhibit 16F, pages 61-61, 66-67)[A.R. 343-49].

At the request of the claimant's representative, the claimant was seen by another rheumatologist, I. Kazmers, M.D., in January 2007 who prescribed Methotrexate, but the claimant testified that due to some infections at the time, she did not take the medication and there is no record that she ever went back to attempt to take the medication or return to Dr. Kazmers for further treatment. [A.R. 695-715].

* * *

Dr. S[ie]mer, the claimant's treating family physician, completed a form entitled *Arthritis Impairment Questionnaire* on April 11, 2005 (Exhibit 23F)[A.R. 567-74], which is outside the date last insured. While he is a longstanding treating physician, his opinion appears to rest at least in part on an assessment of impairment(s) outside his area of expertise and cannot be given greater weight than would be [given] to a specialist in that area. He also completed a *Psychiatric/Psychological Impairment Questionnaire* (Exhibit 25F)[A.R. 668-75] which is also outside his expertise. With respect to the voluminous records he submitted, the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is patients can be quite insistent in seeking supportive notes or reports from their physicians, who might provide such a report to satisfy their patients' requests and avoid unnecessary doctor/patient tension. For example, he submitted the same report twice with only the date changed (Exhibits 27F, 38F)[A.R. 688-94, 796-802] as well as 2 reports outside his expertise shown above (Exhibits 23F, 25F)[A.R. 567-74, 668-75]. While it is difficult to confirm the presence of such motives, this appears to be an inordinately supportive relationship to the extent of being somewhat questionable. Thus, while the opinion of Dr. S[ie]mer as a family physician has been considered, it is not wholly persuasive.

(A.R. 33-35).

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). Dr. Siemer's opinion that plaintiff was disabled was not entitled to any special significance. *See* 20 C.F.R. § 404.1527(e)(1); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *see Allen v. Commissioner*, 561 F.3d at 652; *Deaton*, 315 F. App'x at 598.

"Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Commissioner*, 375 F.3d at 390. A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). The credibility of the plaintiff's subjective complaints is an issue reserved to the Commissioner, and a treating physician's opinion regarding the credibility of his patient's subjective

complaints is not entitled to any particular weight. *See Allen v. Commissioner*, 561 F.3d at 652. An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 330 F. App'x 563, 570 (6th Cir. 2009); *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

The ALJ described Dr. Siemer's relationship with plaintiff as "unusually supportive" and noted that this family practitioner was willing to submit multiple reports in support of plaintiff's

disability claims that were "outside his expertise." The ALJ's observations were appropriate and well-supported. He did not reject the restrictions proffered by Dr. Siemer simply based on "speculation" regarding Dr. Siemer's motives. *See Langley v. Barnhart*, 373 F.3d 1116, 1120-21 (10th Cir. 2004). Dr. Siemer's proffered restrictions were not supported by evidence and reflected a level of restriction much greater than that described by plaintiff's treating specialists. The weight to be given to testimony or other evidence from a treating physician will vary, depending on the circumstances:

> The advantage that a treating physician has over other physicians whose reports might figure in a disability case is that he has spent more time with the claimant. The other physicians whose reports or other evidence are presented to the administrative law judge might never even have examined the claimant (that was true here), but instead have based their evidence solely on a review of hospital or other medical records. But the fact that the claimant is the treating physician's patient also detracts from the weight of that physician's testimony, since, as is well known, many physicians (including those most likely to attract patients who are thinking of seeking disability benefits, *cf.* Seth A. Seabury, Robert T. Reville & Frank Neuhauser, "*Physician Shopping in Workers' Compensation: Evidence from California*," 3 JOURNAL OF EMPIRICAL LEGAL STUDIES 47 (2006)) will often bend over backwards to assist a patient in obtaining benefits. *Black & Decker Disability Plan* [*v. Nord*], 538 U.S. [822,] 832 [(2003)]; *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 917 (7th Cir. 2003), and cases cited there. Moreover, though not in this case, the treating physician is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are.

> So the weight properly to be given to testimony or other evidence of a treating physician depends on circumstances. As explained in the accompanying order, the administrative law judge was justified in giving greater weight to the medical evidence that contradicted the treating physician's evidence than to his evidence.

*Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). I find no violation of the treating physician rule. The ALJ's decision is supported by more than substantial evidence, and the ALJ gave appropriate weight to Dr. Siemer's opinions in light of the findings of the specialists and the other

evidence of record. Furthermore, the ALJ complied with the procedural requirement of providing "good reasons" for the weight he gave to Dr. Siemer's opinions.

**3.**

Plaintiff argues that the ALJ committed reversible error when he failed to ask the VE whether his testimony classifying the jobs of cashier, telephone interviewer, and machine tender as sedentary and unskilled was consistent with the *Dictionary of Occupational Titles* (*DOT*). (Plf. Brief at 23-24). I find that this was an error, but it was harmless.

In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 14,000 jobs in the State of Michigan that the hypothetical person would be capable of performing: 10,000 cashiers, 2000 telephone interviewers, and 2000 machine tenders. (A.R. 900-01). The ALJ and plaintiff's attorney then failed to ask the VE the follow-up question regarding whether the VE's classification of the cashier, telephone interviewer, and machine tender jobs as sedentary and unskilled was consistent with the *DOT*. (A.R. 901-08). Plaintiff's argument that the ALJ failed to adequately develop the record because he did not ask the VE whether a conflict existed ignores controlling Sixth Circuit authority. It is well established law in the Sixth Circuit that the ALJ's special duty to *pro se* parties to develop the record does not extend to claimants represented by an attorney at the hearing. *See Wilson v. Commissioner*, 280 F. App'x 456, 459 (6th Cir. 2008); *Trandafir v. Commissioner*, 58 F. App'x 113, 115 (6th Cir. 2003); *see also Kelly v. Commissioner*, 314 F. App'x 827, 831 n.1 (6th Cir. 2009). The hearing transcript shows that plaintiff's attorney had

a more than adequate opportunity to question the VE if he had any concern whether the aforementioned jobs were consistent with the *DOT*.

Under SSR 00-4p, the ALJ was required to ask the VE on the record whether the evidence he had supplied was consistent with the *DOT*, and the ALJ's failure to do so was error. *Lindsley v. Commissioner*, 560 F.3d 601, 605 (6th Cir. 2009); *see Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Information in Disability Decisions*, SSR 00-4p (reprinted at 2000 WL 1898704, at * 4 (SSA Dec. 4, 2000)). The Sixth Circuit has held that harmless error analysis applies in this context. *Lancaster v. Commissioner*, 228 F. App'x 563, 574 (6th Cir. 2007). Plaintiff's brief and reply brief have not identified "any apparent, let alone actual conflict between the *DOT* and the testimony of [the] VE." *Lindsley v. Commissioner*, 560 F.3d at 605. There is no evidence that the VE's testimony conflicted with the *DOT*. The ALJ's error is deemed harmless. *See Fleeks v. Commissioner*, No. 08-cv-13135, 2009 WL 2143768, at * 6-7 (E.D. Mich. July 13, 2009) (collecting cases).

"The function of the VE is to advise the ALJ of jobs found among various categories of employment which the claimant can perform with her limitations. The ALJ may choose to rely on the VE's testimony in complex cases, given the VE's ability to tailor h[is] finding to an 'individual's particular residual functional capacity.'" *Beinlich v. Commissioner*, 345 F. App'x 163, 168 (6th Cir. 2009) (quoting *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003)). The *DOT* is a reference source available to vocational experts, but it is certainly not the only one. *See Baranich v. Barnhart*, 128 F. App'x 481, 486 n.3 (6th Cir. 2005); *see also* 20 C.F.R. §§ 404.1560(b)(2), .1566(d), .1567; *accord Cunningham v. Astrue*, No. 08-3848, 2010 WL 22286, at * 9-10 (6th Cir. Jan. 5, 2010). The *DOT* is somewhat limited in that it classifies jobs by skill and exertional

(strength) demands. It does not address non-exertional limitations. *See Baranich*, 128 F. App'x at 485; *see also* 20 C.F.R. §§ 404.1569, .1569a.[11] "[N]either the ALJ nor the VE is required to follow the *DOT*." *Beinlich v. Commissioner*, 345 F. App'x at 168 (citing *Wright v. Massanari*, 321 F.3d at 616). In *Wright v. Massanari*, the Sixth Circuit held that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications." 321 F.3d at 616.

Plaintiff's argument attacking the adequacy of the hypothetical question is simply a reformulation of her arguments attacking the adequacy of the ALJ's factual findings regarding her credibility and RFC. A VE's testimony in response to a hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question is not required to list the claimant's medical conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ found that plaintiff's subjective complaints were not fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Chandler v. Commissioner*, 124 F. App'x 355, 358-59 (6th Cir. 2005).

---

[11]The ALJ was not bound to accept hearing testimony of any witness, including the VE. *See Banks v. Massanari*, 258 F.3d 820, 827-28 (8th Cir. 2001).

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:   March 22, 2010          /s/  Joseph G. Scoville_____
                                 United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).